White, J.
The first question arising in this case is,, whether the provisions of the “ act to regulate the election of state and county officers,” which authorize the election of certain officers to be contested before the senate, are constitutional.
It is claimed on behalf of .the defendant, that the provisions referred t-o are void, on the ground that they assn nieto confer on -the senate judicial power, which, under the constitution, can only be exercised by the courts of the state.
The provisions of the statute are alleged to be in conflict with sec. 1, art. 4, and sec. 32, art. 2 of the constitution.
Article 4 is the judicial article, and sec. 1 is as follows u *258 u The judicial power of the state shall be vested in a supreme court, in district courts, courts of common pleas, courts of probate, justices of the peace, and in such other ■courts, inferior to the supreme court, in one or more counties, as the general assembly may, from time to time, establish.”
Article 2 is the legislative article, and sec. 32 is as follows : “ The general assembly shall grant no divorce, nor ■exercise any judicial power not herein expressly conferred.”
That the senate is not a court established under the judicial article of the constitution, is plain. Hence, if the trial of contested elections is necessarily the exercise of judicial power, within the meaning of that article, authority to try ■such cases can not be conferred upon the senate.
The distribution of powers among the legislative, executive, and judicial branches of the government, is, in a general sense, easily understood; but no exact rule can be laid down, a priori, for determining, in all cases, what powers may or may not be assigned by law to each branch:
The power of allotting'to the different departments of government their appropriate functions is a legislative power; and in so far as the distribution has not been made in the constitution, the power to make it is vested in the general assembly, as the depository of the .legislative power •of the state.
True, the judicial article requires the judicial power of "the state, to be vested in the courts and injustices of the peace; but of what this judicial power consists, and what are its limits, are not defined.
The jurisdiction of the courts and justices, except in a few specified eases, is required to be such as may be prescribed by law.
What constitutes judicial power, within the meaning of the constitution, is to be determined in the light of the common law and of the history of our institutions as they existed anterior to and at the time of the adoption of the constitution.
Whether power, in a given instance, ought to b'e assigned *259 to the judicial department, is ordinarily determinable from tbe nature of tbe subject to which tbe power relates. Id many instances, however, it may appropriately be assigned to either of tbe departments.
It is said authority to bear and determine a controversy upon tbe law and fact is judicial power.
That such authority is essential to tbe exercise of judicial power, is admitted; but it does not follow that tbe exercise of such authority is necessarily tbe exercise of judicial power.
Tbe authority to ascertain facts, and to apply tbe law to tbe facts when ascertained, appertains as well to tbe other ■departments of tbe government as to tbe judiciary. Judgment and discretion are required to be exercised by all tbe departments.
■ Tbe exercise of tbe power of eminent domain vested in ■county and township boards and in corporations, is not tbe exercise of judicial power, within tbe meaning of tbe constitution ; while tbe exercise of the same power by tbe ■courts, if vested in them, would be judicial.
It was on this ground that it was held in Powers v. Reed, 19 Ohio St. 189, and in tbe preceding cases on tbe same subject, that tbe trial of a contested election by tbe court •of common pleas was tbe exercise of judicial power, and subject to review on error.
It was contended by counsel, in Powers v. Reed, that tbe authority to try contested elections was, in its nature, political or administrative, and might be conferred on any officer or political body, as well as upon tbe courts.
This proposition was not denied by tbe court; but tbe ■decision was placed on tbe ground that tbe power having been conferred on tbe court, its action was tbe exercise of judicial authority, and was subject, under tbe code, to review on questions of law.
In tbe matter of Cooper, 22 N. Y. 84, tbe principle is thus stated, by Selden, J.: “ Tbe principle . . . obviously is, that where any power is conferred upon a court of justice, to be exercised by it as a court, in tbe manner *260 and with the formalities used in its ordinary proceedings, the action of such court is to be regarded as judicial, irrespective of the original nature of the power. The legislature, by conferring any particular power upon a court, virtually declares that it considers it a power which may be most appropriately exercised under the modes and forms of judicial proceedings.”
Our system of elections is unknown to the common law. The whole subject is regulated by statute; and the mode-of contesting elections is part of the machinery provided by statute for ascertaining the result of the election.
Independent of the original nature of the power, the constitution itself plainly recognizes the separation of the authority to try contested 'elections, from the judicial power which is required to be vested in the courts.
Section 21, article 2, is as follows: “ The general assembly shall determine by law before what authority, and in what manner, the trial of contested elections shall be-conducted.”
Under this provision, the selection of the authority for the trial of contested elections rests in the discretion of the general assembly ; and the exercise of this discretion is not limited to a selection to be made from the courts-established under the constitution. And although it is true the question now made did not arise in the case of The State ex rel. v. Marlow, yet we fully concur with what is-said in the opinion in that case, by Scott, J., on the subject. 15 Ohio St. 184.
We are unanimous in the opinion that the statute, in conferring authority on the senate to try contested elections, is subject to no constitutional objection.
The next question arising in the case is, whether the proceedings to contest the election in question were commenced prematurely.
The election was held on the second Tuesday of October, 1876. The general assembly met on the second day of January, 1877, in pursuance of a 'joint resolution passed April 11,1876, providing for an adjournment on the 12th *261 ■of April 1876, and a reassembling on the second day of January, 1877. 78 Ohio L. 338. The contest in question was tried before the senate, and determined at the session commencing January 2, 1877.
The question depends on the construction of- the forty-third section of the act to regulate the election of state and county officers, 1 S. & C. 540.
.The section is as follows : “ That any candidate or elector being desirous of contesting the election of any person declared elected governor, lieutenant-governor, secretary of state, auditor of state, treasurer of state, attorney-gen eral, judge of the supreme court, member of the board of public works, judge of the court of common pleas, or judge of the criminal court of any county, shall, between the sixth and tenth days after the commencement of the first general assembly after the election, file a notice of such intention with the clerk of the senate, specifying the particular points on which he means to rely,” etc.
The notice of contest was filed with the clerk of the senate between the sixth and tenth days after the commencement of'the session, on the 2d of January, 1877; •and the question is whether the convening or coming together of the general assembly at that time constituted, within the meaning of the statute, the commencement of the first general assembly after the election.
It is contended, on behalf of the defendant, that by the language “ the commencement of the first general assembly ■after the day of election,” is meant the commencement of the first regular session of the general assembly, after the ■election; and as the regular session would not commence until the first Monday of January, 1878, that, consequently, the determination of the contest by the senate was void, for want of authority or jurisdiction over the subject at the time of the trial.
The statute under consideration was passed May 3,1852, •at the first session of the general assembly under the present constitution.
On the 26th of April preceding,.a joint resolution was *262 passed for the adjournment of the general assembly on the first Monday of May, to meet again on the third Monday of November following. By joint resolutions passed on the 30th of April and on the 3d of May, this reassembling of the general assembly was recognized as an “ adjourned session.” (50 Ohio L. 40,47.)
At this adjourned session, on February 9, 1853, an act was passed “to provide for the organization,of the general assembly.” This act provides for regular, adjourn'ed, and called sessions; and section twelve declares “ that whenever, at the commencement of, or during a regular, adjourned, or called session of the general assembly,” members are absent, their attendance may be compelled in the mode prescribed. 3 Curwen, 2128.
The provision requiring notice to be filed with the clerk of the senate, between the sixth and tenth days after the commencement of the first general assembly, has reference-to the time of the meeting of the general assembly as an-organized body for the transaction of business.
The general assembly, in legal contemplation, is a continuing body, as enduring as- the constitution ; but when not in session it has merely a potential existence. Its members are at all times liable to be called together to act as an organized body; and it is only when they are thus convened that the general assembly can be said to be in session, or competent for the transaction of business.
As respects the power or capacity of the general assembly,, it is a matter of indifference whether it is convened in pursuance of the express injunction of the constitution, at, the time prescribed for the regular session, or under the call of the governor, or at a time fixed by itself. Its authority is as ample, at one session as at another.
It may be conceded that the statute was framed upon the idea that, ordinarily, there would only be biennial sessions-of the general assembly; and that as a matter of fact special sessions may be held either on the call of the governor, or-by adjournment, to which the act can not be applied. -But this is no good reason for restricting its provisions to reg *263 ular sessions, when other sessions occur to which such provisions are equally applicable.
Eor the purposes of the present case it may also he conceded that in order to come within the provisions of the section in question, the session must commence after the election, and after the person whose election is contested, has been declared elected.
These conditions exist in the present instance, and, when such is the ease, we see no good reason for requiring the contest to be postponed until half of the term of office has expired.
Under the constitution a judge of the supreme court and a member of the board of public works are required to be elected annually. In case a vacancy occurs in the office of any judge more than thirty days before any annual election, his successor is required to be elected at such election.
The term of office of secretary of state, treasurer, and attorney-general is two years, and of auditor four years. Section 18, article 3, of the constitution, provides that should the office of auditor, treasurer, secretary, or attorney-general, become vacant, the vacancy shall be filled by election, at the first general election that occurs more than thirty days after it shall have happened; and that the person chosen shall hold the office for the full term.
Notwithstanding the frequency with which these important offices, in all probability, would be required to be.filled at the annual election intervening between the biennial elections of members to the general assembly, it is claimed to have been the intention of the legislature in providing means for contesting such elections to require the contests to he postponed for more than a year after the election, merely to have them tried by the senate at a regular session of the general assembly.
Where there is a session of the senate in the mean time, competent to try the contest, the reason and spirit of the statute is against such delay; and to justify the construction contended for, the language ought to be clear, and not ambiguous or doubtful.
*264 Though, many of the provisions of the act are somewhat confused and illy digested, yet its manifest policy and spirit is to require election contests to be determined as speedily as practicable.
' The intention in requiring the notice to be filed with the clerk of the senate “ between the sixth and tenth days after the commencement of the first general assembly after the day of election,” was to require promptness of action on the part of those intending to contest- the election, rather than to delay the contest by requiring it to be had at a particular session of the general assembly.
The recognized rules of construction fully warrant us in the construction we give to the statute.
Remedial' statutes are to be liberally construed, to advance the remedy.
“ The words of a remedial statute' are to be construed largely and beneficially, so as to suppress the mischief and advance the remedy. It is by no means unusual to extend the enacting woi’ds beyond their natural import and ieffect, in order to include cases within the same mischief.” Dwarr. on Stat. 734, 735; Tracy v. Card, 2 Ohio St. 441. <l The intention of the law makers may be collected from the cause or necessity of the act, and statutes ai’e sometimes constraed contraxy to the literal meaning of the wTords. It has been decided that a thing within the letter was not within the statute, unless within its intention. The letter is sometimes restrained, sometimes enlarged, and sometimes the construction is contrary to the letter.” Burgett v. Burgett, 1 Ohio, 480.
In the opinion of a majority of the court, the senate was-well warranted in assuming jurisdiction of the case at the time it did.
The remaining objection has relation only to the light of the relator to be inducted into the office.
The grounds of the objection ai’e, that Wm. II. Pugh, one of the defeated candidates, as found by the returns, was returned as having received ninety-five more votes than the relator, Cox; that there were three judges to be elected, *265 .and six candidates.therefor, of whom the three highest were declared elected by the clerk alnd justices. -
It is claimed, that as Pugh was not made a party to the •contest, nor required to come in and set up his claim, that he is not affected by the decision of the senate, and that, :as against him, the relator could not be adjudged elected.
We are unanimous in the opinion that there is no'foundation for this claim. As between Pugh and the defendant, the latter was declared elected by the clerk and justices; and 'the former, having taken no appeal, is concluded by the declaration.
In the contest before the senate, the title of the relator to the office, as well as the title of the defendant, was put ‘in issue, and the finding on the issues having been in favor ■of the relator, the public, as well as the parties, are con-cluded by the decision.
Judgment- of ouster against the defendant, and of indue-, tion in favor of the relator.
Gilmore, J., dissented as to the second proposition in the •syllabus.